IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

BILLY L. LEMONS,                )
                                )
            Plaintiff,          )
                                )
v.                              )    Case No. CIV-08-009-RAW
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

**REPORT AND RECOMMENDATION**

Plaintiff Billy L. Lemons (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 26, 1978 and was 29 years old at the time of the ALJ's decision. Claimant completed his education through the tenth grade and was enrolled in special education classes. Claimant has worked in the past as an oilfield roustabout, a pumper, a grocery stocker, and a lumber yard worker. Claimant alleges an inability to work beginning September 22, 2004 due to sleep apnea and narcolepsy.

### Procedural History

On April 8, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and

supplemental security income pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's applications were denied initially and upon reconsideration. On May 22, 2007, a hearing was held before ALJ Michael Kirkpatrick in Paris, Texas. By decision dated September 18, 2007, the ALJ found that Claimant was not disabled during the relevant period. On September 18, 2007, the Appeals Council declined to review the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing, and retained the residual functional capacity to perform a full range of light work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly develop the record related to Claimant's sleep problems; and (2) analyzing Claimant's credibility. Additionally, Claimant contends the case must be remanded for consideration of new and material evidence.

## Duty to Develop the Record and Consideration of New Evidence

Claimant first asserts the ALJ failed to adequately develop

4

the record surrounding Claimant's difficulties sleeping. On June 19, 2003, Claimant was evaluated by Dr. William Collazo, complaining of chest pain and syncope. Claimant's wife stated he slept continuously when not working. Dr. Collazo observed Claimant sleeping, noting Claimant snored loudly with intermittent episodes of apnea. (Tr. 141-142).

On June 19, 2003, Dr. Brad Marion conducted a sleep study on Claimant. Claimant experienced 233 respiratory events during the study. He suffered from severe oxygen desaturation. Continuous positive airway pressure ("CPAP") was initiated and Claimant only suffered 8 additional respiratory events. Dr. Marion diagnosed Claimant with severe obstructive sleep apnea. He recommended Claimant lose weight and continue CPAP treatment. (Tr. 170-174).

Dr. Collazo treated Claimant with a beta blocker after Claimant's heart rate was found to be tachycardic while he was hospitalized. (Tr. 139-140).

On April 20, 2004, Claimant was treated by Dr. Robert O. Zimmerman for sleep apnea. Claimant continued to experience episodes of syncope. Dr. Zimmerman increased the CPAP pressure. Dr. Zimmerman also Claimant might need a further sleep study for CPAP purposes. (Tr. 178-179).

On May 4, 2004, Claimant again saw Dr. Zimmerman and reported his sleepiness had decreased. He stated he was working 12 hours per day. Dr. Zimmerman stated in his report that he would order

another sleep study to be performed. (Tr. 177).

On November 26, 2004, Claimant sought treatment at the Paris Regional Medical Center for shortness of breath and wheezing. Testing revealed Claimant's lungs were mildly hyperexpanded, possibly suggesting reactive airway disease. Dr. Zimmerman examined Claimant and found subtle bilateral central pulmonary infiltrates consistent with pneumonia. He diagnosed Claimant with pneumonia, chronic obstructive pulmonary disease, obstructive sleep apnea, tobacco abuse, and hyperglycemia with diagnosis of new onset diabetes. (Tr. 180-181).

On January 3, 2005, Claimant was attended by Dr. Zimmerman for a follow-up visit on treatment for sleep apnea. Claimant informed Dr. Zimmerman that the CPAP was not helping and that he was still not rested. Dr. Zimmerman increased his CPAP pressure and set forth in his report that Claimant might need medication for his condition. Dr. Zimmerman noted Claimant could not afford a sleep study. (Tr. 176).

On April 4, 2005, Claimant presented to the Choctaw Memorial Hospital, complaining of dizziness, nausea, and vomiting. He was attended by Dr. G.V.N. Murty. Claimant was admitted due to high glucose levels. Dr. Murty diagnosed Claimant with hyperglycemia (628), diabetes mellitus under poor control, hyponatremia, and nausea and vomiting. (Tr. 186-187).

On March 30, 2006, Claimant underwent a consultative physical

6

examination by Dr. Gordon B. Strom, Jr. Claimant informed Dr. Strom he had sleep apnea, hypertension, and diabetes. Dr. Strom noted Claimant's initial sleep study and the ineffective use of a CPAP device. He also acknowledged Claimant's hospitalization for the use of a BiPAP device which did not work with his sleep pattern. Claimant described his condition as causing him to fall asleep on the job and while driving. He also experienced sensory numbness in his hands. (Tr. 211).

Upon examination, Dr. Strom found Claimant to be obese with diminished sensation involving his feet and hands with complaint of dysesthesia. He demonstrated adequate range of motion. Dr. Strom's impression of Claimant's condition was sleep apnea with probable central sleep disorder, chronic smoker, hypertensive cardiovascular disease, insulin dependent diabetes, poorly controlled, urinary incontinence, by history, diabetic neuropathy involving both hands and feet, and folliculitis involving his lower extremities. He stated Claimant suffered from a history of sleep disturbance that appears to be central in origin, with both an obstructive and central component to his sleep problem. He recognized Claimant did not obtain relief with the usual measures for obstructive sleep apnea. Claimant appeared somnolent during the exam, disheveled with difficulty relating his history. Dr. Strom concluded Claimant "does have a significant history that would probably limit his ability to perform work related

7

activities." (Tr. 212-213).

In his decision, the ALJ found Claimant "has not sought further treatment for his obstructive sleep apnea." (Tr. 16). He also determined Claimants subjective complaints were not supported by the medical evidence and that he had received only conservative treatment. Id.

Claimant also contends the case should be remanded for consideration by the ALJ of new sleep study reports dated December 24, 2007 and after, authored by Dr. Chip Jackson with the Jackson Sleep Disorder Clinic in Paris, Texas. In these reports, Dr. Jackson concludes Claimant suffered from severe accentuate apnea and profound narcolepsy with cataplexy. He draws the ultimate conclusion from his studies that "there is no conceivable way from a medical standpoint that this gentleman could ever hold down an 8 hour work day nor any other job. He most certainly could not perform any manual activities or the use of machines. This gentleman, by my standards, has been told that he is ineligible to drive at all!" (*See*, Attachment 1 to Claimant's Opening Brief).

The ALJ has a duty to fully and fairly develop the record as to material issues. Baca v. Dept. of Health & Human Servs., 5 F.3d 476, 479-80 (10th Cir. 1993). To serve that end, the ALJ has broad latitude in ordering consultative examinations. Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997). If a conflict in the medical evidence exists or if that evidence is inconclusive, a consultative

examination may be required. Id. In this case, the extent and severity of Claimant's sleep condition and the repeated need for further testing expressed by Claimant's treating physician should have put the ALJ on notice that a consultative examination and to Claimant's sleep disorder was warranted. This need is accentuated by the new material developed and offered by Claimant from Dr. Jackson. Additionally, the ALJ specifically rejected Claimant's claims of the debilitating nature of his condition based upon the fact he did not receive further medical treatment and was treated conservatively. The record reveals further treatment was dependent upon the sleep studies Claimant stated he could not afford. On remand, the ALJ shall specifically employ the services of a consultative examiner to determine the severity of Claimant's sleep disorders. Should the new materials offered by Claimant encompass the relevant time period of disability, the ALJ shall consider this new evidence in evaluating Claimant's condition and its effect upon his ability to work.

## Credibility Analysis

Claimant also contends the ALJ's credibility analysis could be affected by both a new consultative examination and the new materials he now offers. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

"Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. After obtaining the consultative examination and considering the new materials offered by Claimant, the ALJ shall re-evaluate his credibility analysis of Claimant's claim of a disabling condition.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of March, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE